## Appeal of THE PRECISION MACHINE CO., INC.

Docket No. 3104.   Submitted February 23, 1926.   Decided June 23, 1926.

Proof insufficient to determine debt to be worthless.

*Otto E. Koegel, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the Commissioner.

Before GRAUPNER[1] and TRAMMELL.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office at 317 East Thirty-fourth Street, New York. Its business is the manufacture and sale of motion-picture machines.

---

[1] This decision was prepared by Mr. Graupner during his term of office.

The C. & H. Manufacturing Co., hereinafter referred to as the C. & H. Co., is a New York corporation organized April 21, 1913, for the development and manufacture of a high speed motion-picture camera.

Frank C. Cannock, the secretary of the taxpayer company, was the inventor of a motion-picture machine which the C. & H. Co. was endeavoring to develop. He was the owner of the majority of stock in and the moving spirit of the latter company. The experimental room of the C. & H. Co. was located on the premises occupied by the taxpayer.

The C. & H. Co. had no funds of its own and, from time to time, as money was needed to meet the expenses of development and to pay bills, the taxpayer advanced the amounts required. The advances made during a period from some time in 1913 to November 30, 1919, totaled $37,265.24. Of this amount $1,729.57 was advanced after Cannock's death on January 9, 1919.

Prior to Cannock's death, efforts were made to sell the motion-picture machine. In 1918, a Mr. Evans, with whom some negotiations were had for a sale, put a price of $50,000 on the camera, which at that time was still to a great extent incomplete. These negotiations did not result in a sale.

After the death of Cannock, various parts, dies, tools and equipment, which were in the custody of the C. & H. Co., were taken over by the taxpayer. Their value was appraised by the superintendent of the taxpayer company at $2,265.24 and they were placed in the stock of the taxpayer. The amount of the appraisal was credited to the C. & H. Co. on the books of the taxpayer. The manager and cashier of the taxpayer, after some investigation of the camera and its prospects, decided they were not sufficiently familiar with that field and advised the company to abandon the matter.

At a conference between the manager and the bookkeeper and a Mr. Friedman, who was one of the attorneys for the taxpayer, it was decided to charge off the balance remaining after crediting the original indebtedness of $37,265.24 with the appraised value of the inventory taken over. The amount of $35,000 was charged off the books of the taxpayer in December, 1919.

The C. & H. Co. is still in existence.

OPINION.

GRAUPNER: It is contended in substance that the taxpayer relied for repayment mainly on the inventive genius of Cannock, and that after his death nothing remained except possibly the parts and tools which were taken over, and that there was nothing out of which the

debt could be satisfied. If this had been established the taxpayer might be entitled to prevail.

It was shown that the last advance was made November 30, 1919, almost eleven months after Cannock's death, so it may reasonably be presumed that the taxpayer had expectations of collecting the amount due it without recourse to Cannock. Yet the debt was charged off some time in the following month, the exact date not being shown. There is evidence to the effect that "all manner of means" to collect the debt were attempted, but of what these attempts consisted or when they were made we have no knowledge. As we held in the *Appeal of Valdosta Grocery Co.*, 2 B. T. A. 727, evidence of efforts made to collect a debt, unaccompanied by a showing of what those efforts were or why they failed, is insufficient.

There is also the fact to be considered that the C. & H. Co. is still in existence. While one of the witnesses testified the company was "dormant," in the same breath he stated he did not know whether the company was doing any business. Apparently no steps were ever taken by the taxpayer to liquidate the company. While a creditor is not required to resort to legal remedies to establish the worthlessness of a debt, the fact that he did not, with no facts establishing a reason for not doing so, is matter for consideration.

Upon the whole evidence, we are of the opinion that the worthlessness of the debt has not been established.

> *The deficiency is $14,171.85. Order will be entered accordingly.*